UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DETROIT,

    Plaintiff/Counter-Defendant,

v.

Case No.: 22-10304
Honorable Gershwin A. Drain

OUTFRONT MEDIA, LLC,

    Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER GRANTING CITY OF DETROIT'S MOTION FOR JUDGMENT ON THE PLEADINGS [#5]

### I.  INTRODUCTION

On January 20, 2022, the City of Detroit filed the instant action in the Wayne County Circuit Court seeking a declaratory judgment that Defendant Outfront Media, LLC's ("Outfront Media") license to site a billboard on property formerly owned by the Consolidated Rail Corporation ("Conrail") was terminated when Conrail sold the property to the City.  Outfront Media removed the action to this Court and filed its Answer and Counterclaims, also seeking a declaratory judgment, as well as alleging quiet title, 42 U.S.C. § 1983 Fifth Amendment takings, breach of contract, and Michigan Highway Advertising Act ("HAA"), MICH. COMP. LAWS § 252.301, claims.

Now before the Court is the City's Motion for Judgment on the Pleadings. This matter is fully briefed and a hearing was held on July 19, 2022. For the reasons that follow, the Court grants the City's Motion for Judgment on the Pleadings and dismisses this cause of action.

## II.     FACTUAL BACKGROUND

In January of 2001, Transportation Displays Incorporated (TDI), Outfront Media's predecessor, entered into a Master Site License and New Site Management Agreement (the "License Agreement") with Conrail which governed "the licensing and management" of "Existing and New Sites" for billboards and bridge signs used for advertising. *See* ECF No.1, PageID.69 (providing TDI a license to "construct, erect, maintain and use, for advertising purposes . . . an Existing or New Sign" on Conrail property). Section 2.05 of the License Agreement states that if Conrail sold any of the property subject to an existing license resulting in the elimination of an "Existing Sign or Subsequent Sign" then Conrail "may, at its option:

(A) Substitute a different site which is mutually agreeable to both parties of similar size and general revenue characteristics, which from and after such substitution, shall be deemed an Existing Site for purposes of this Agreement; or
(B) Pay TDI an amount calculated as reimbursement for termination in accordance with the formula and examples set forth in Exhibit A to this Agreement."

*Id.*, PageID.72. Section 2.06 provides that the remedies afforded by section 2.05 do not apply if the purchaser of the Conrail property agrees to be bound by the applicable licenses. *Id*. Section 17.01 states:

> Except as otherwise agreed herein or otherwise in writing, this Agreement is expressly made subject to any abandonment by Conrail of all or any part of its lines of railroad, to any and all sales of the Conrail Property[.]"

*Id.*, PageID.83. The License Agreement's term ends on December 31, 2025.

On August 18, 2018, the City and Conrail entered into a Purchase and Sale Agreement for 78 acres of abandoned railway comprising roughly 7 miles of continuous, non-motorized greenway that will connect 200 miles of existing bike lanes and shared use paths in the City and adjourning cities. ECF No. 4, PageID.131-147. The Purchase and Sale Agreement provided, except for 2 licenses for billboards not at issue here, that "any easement, license, or lease covering any portion of the Property shall be terminated as of the date of the Closing and shall no longer be enforceable." *Id.*, PageID.139.

The Conrail property for the greenway project was conveyed to the City at the closing on April 18, 2019, by covenant deed. ECF No. 1, PageID.15-56. On October 20, 2021, counsel for the City sent correspondence to Outfront Media indicating that the City owned the land north of Oakman Boulevard and west of Rosa Parks Boulevard in Detroit, where the billboard is located, and Defendant did not have a right to operate the billboard on the property. *Id.*, PageID.67.

Defendant's counsel responded on November 5, 2021 and informed the City that Outfront Media had no intention of removing the billboard claiming the billboard was permitted by the License Agreement. Defendant's counsel asserted the covenant deed from Conrail to the City is subject to "certain permitted exceptions (including recorded and unrecorded easements), which would include Outfront Media's lease and right to use the property." *Id.*, Ex.5.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal quotations and citations omitted). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, *Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F.

Supp. 381, 383 (E.D. Mich. 1982), that is not the case for a legal conclusion couched as a factual allegation, *Fritz,* 592 F.3d at 722.

## B. Conrail's and TDI's License Agreement

The City seeks a declaratory judgment that Outfront Media's license to site a billboard on formerly owned Conrail property terminated when the City purchased the property from Conrail pursuant to Michigan law and the express terms of the License Agreement and Purchase and Sale Agreement. In its Response to the City's Motion, Outfront Media does not contest the general rule of Michigan law that a license to use land terminates when land is sold but argues the License Agreement is not a revocable license. Rather, Outfront Media maintains it was granted a lease to operate the billboard on the property. At the very least, Outfront Media asserts it possesses a license coupled with an interest in the property.

In *Kitchen v Kitchen*, 465 Mich. 654; 641 N.W.2d 245 (2002), the Michigan Supreme Court upheld the trial court's dismissal of a claimed oral license agreement to use an irrigation system because a license to use land, whether written or oral, is revocable at the will of the grantor. *Id*. at 658. The Michigan Supreme Court explained that "[b]y definition, a license is a 'permission to do some act or series of acts on the land of the licensor without having any permanent interest in it[.]'" *Id*. (citations omitted). The *Kitchen* court further explained:

> In general, a license is revocable at will and is automatically revoked upon transfer of title by either the licensor or licensee. *Forge*

5

>v. *Smith*, 458 Mich. 198, 210, 580 N.W.2d 876 (1998); *Sallan Jewelry Co. v. Bird*, 346, 348, 215 N.W. 349 (1927).
>
>Oral and written licenses, which are terminable at will by the grantor, are valid. *See McCastle v Scanlon*, 377 Mich. 122, 133, 59N.W.2d 114 (1953). The reason is that these licenses, because of their revocability, do not create an interest in land.

*Id.* at 658-659.

Contrary to Outfront Media's argument, the License Agreement does not guarantee that any billboard could remain in any particular location for the duration of the 25-year term of the License Agreement. Section 2.05 expressly contemplates that the license for any billboard site would terminate upon Conrail's sale of the property, and further provides that in the event of such a sale Conrail would substitute another suitable Conrail site for the billboard or pay reimbursement. Section 2.06 provides that the remedies in Section 2.05 do not apply where the purchaser of Conrail property agrees to be bound by the applicable license. Moreover, section 17.01 provides: "Except as otherwise agreed herein or in writing, the Agreement is expressly made subject to [] any and all sales of the Conrail Property." Finally, Section 15 of the Purchase and Sale Agreement between the City and Conrail provides that except for the two excepted signboards not at issue here, any license shall be terminated and no longer enforceable as of the closing, i.e., when the deed was delivered on April 18, 2019.

6

Outfront Media does not have a lease for the billboard.  A lease is a conveyance by the owner of an estate of a portion of the interest therein to another for a term less than his own for a valuable consideration.  *Dep't of Natural Resources v. Bd. of Trustees of Westminster Church*, 114 Mich. App. 99, 104, 318 N.W.2d 830 (1982). A lease gives the tenant the possession of the property leased and exclusive use or occupation of it for all purposes not prohibited by the terms of the lease.  *Macke Laundry Service Co. v. Overgaard*, 173 Mich. App. 250, 253; 433 N.W.2d 813 (1988).  In order for an agreement to be a valid lease, it must contain the names of the parties, an adequate description of the leased premises, the length of the lease term, and the amount of the rent.  *Id.* at 253-54.

Here, the License Agreement has no stated rent.  Nor does it describe any leased premises to which OutFront Media has exclusive possession as a lessee. The License Agreement allowed Outfront Media to "construct, erect, maintain and use, for advertising purposes . . . an Existing or New Sign" on Conrail property.  It does not identify any parcel of the property that Outfront Media could use, nor does it confer possession of any specific part of Conrail's property to Outfront Media. Rather, the License Agreement allowed billboards to be sited, and then moved or removed at Conrail's discretion or when the property where a sign is located is sold and the buyer does not agree to be bound by the License Agreement.  Outfront Media's reliance on cases involving undisputed lease agreements, and easements

7

granted by deed is misplaced as none of these facts are present here. *See Randy Disselkoen Props., LLC v. Charter Twp. of Cascade*, No. 1:06-cv-141, 2008 U.S. Dist. LEXIS 1504 (W.D. Mich. 2008); *Adams Outdoor Adver. v. City of Lansing*, 463 Mich. 17, 614 N.W.2d 634 (2000); *City of Norton Shores v. Whiteco Metrocom* (*In re Acquisition of Billboard Leases and Easements*), 205 Mich. App. 659; 517 N.W.2d 872 (1994).

Outfront Media also fails to demonstrate it had a license coupled with an interest. A "license coupled with an interest" is not terminable at will and refers to a privilege that is "'incidental to the ownership of an interest in a chattel located on the land with respect to which the license exists.'" *Forge v. Smith*, 458 Mich. 198, 210; 580 N.W.2d 876 (1998) (citation omitted). In this case, Outfront Media did not have a license to remove a chattel such as coal or timber requiring access to Conrail's property. Outfront Media had the right to site billboards on Conrail property–until such time as the property was sold or Conrail required a billboard be removed or moved. Outfront Media's interest in any particular location was terminable, and as to the billboard at issue here, was terminated by the sale of the property.

Finally, there is also no merit to Outfront Media's claim that its billboard is within an exception specified in the covenant deed, which provides in relevant part:

8

## Covenant Deed

Consolidated Rail Corporation, … conveys, grants, bargains, remises, aliens, and confirms to the City of Detroit, … the "Property", with all the tenements, hereditaments, and appurtenances to it, for $4,329,000, subject to the Permitted Exceptions on the attached Exhibit B.

ECF No. 1, PageID.15.  Exhibit B to the covenant deed provides:

## Exhibit B

1. Recorded easements, exceptions, encumbrances, and restrictions on title.

2. Rights or claims of parties in possession not shown by the public records.

3. Any encroachment, encumbrance, violation, or adverse circumstance affecting the title that would be disclosed by an accurate and complete survey of the Property.

4. Easements or claims of easements not shown by the public records and existing water, mineral, oil and exploration rights.

5. Any lien, or right to a lien, for services, labor, or material, heretofore and hereafter furnished, imposed by law and not shown by public records.

6. Any and all oil, gas, mineral, mining rights and/or reservations thereof.

7. Taxes or special assessment which are not shown as existing liens by the public records. Unpaid water, sewer, electric or gas charges, if any, that have not been levied as taxes against the Property.

8. Any rights the public may have to the use of any roads, alleys, bridges, or streets on or crossing the Property, and any pipes, wires, poles, cables, culverts, drainage systems, or other facilities on or crossing the Property, together with the rights of

>> any person entitled thereto to maintain, repair, renew, replace, use or remove the same.

*Id*. at PageID.56.

Exception Number 1 does not apply because neither the License Agreement or any easements have been recorded. Exception Number 2 does not apply because the License Agreement terminated when the property was conveyed to the City and Outfront Media has no right to operate the billboard on the property. Exception Number 3 does not apply because the billboard is not an encroachment or encumbrance. Exception Number 4 does not apply because neither TDI or Outfront Media have been granted an easement and nor do they allege any claim for mineral, oil or exploration rights. Exception Number 5 applies only to construction or materialman liens. Exception Number 6 applies only to oil, gas, and related rights. Exception Number 7 applies only to certain taxes. Finally, Exception Number 8 pertains to public uses, not a privately owned for-profit billboard. Outfront Media's argument about actual or constructive notice is a red herring. Regardless of the City's knowledge, Outfront Media's billboard was not a permitted exception to the land sale, and its presence was not notice of a recorded or unrecorded property interest.

Here, while the City agreed to allow two other billboards to remain on the property it purchased from Conrail, the City did not agree to allow the billboard at issue to remain, or otherwise agree to be bound by the License Agreement.

Outfront Media, as the successor to TDI's License Agreement with Conrail, held a license to site the billboard on Conrail property. That license, both under Michigan law and by the terms of the License Agreement, terminated when Conrail sold the property to the City. The City is entitled to a declaratory judgment that the City's purchase of the Conrail property terminated Outfront Media's license to site and operate the billboard located north of Oakman Boulevard and west of Rosa Parks Boulevard in the City.

### C. Outfront Media's Counterclaims

Because the Court concludes Outfront Media held a license to site and operate the billboard, which is revocable under Michigan law and the terms of the License Agreement, Outfront Media's claim for quiet title necessarily fails. *Kitchen*, 465 Mich. at 659.

Additionally, Outfront Media's takings claims is not ripe because the City has not taken Outfront Media's personal property as the billboard remains on the property and continues to earn alleged annual revenue of over $75,000.00. Because this claim is not ripe, it is subject to dismissal without prejudice. *See Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 157-58 (6th Cir. 1992).

Outfront Media's breach of contract claim is based on its contention the City is a successor to Conrail's license agreement with TDI and Outfront Media is the

11

successor to TDI. Outfront Media therefore claims the License Agreement between the City and Outfront Media is a valid agreement, however the pleadings and documents attached thereto do not support this contention. The Purchase and Sale Agreement, as well as the covenant deed show a straightforward purchase of some of Conrail's real property. The City did not merge with or acquire Conrail's assets, which is required to support a claim of successor liability. In any event, the Purchase and Sale Agreement expressly states that all licenses it had granted, except for the licenses for 2 billboards not at issue here, terminated upon closing. *See Zantel Mktg. Agency v. Whitesell Corp.*, 265 Mich. App. 559, 570; 696 N.W.2d 735, 741 (2005) (no agreement to assume liabilities can be found where purchaser expressly limited its liabilities in asset agreement).

Finally, there is no merit to Outfront Media's claim that the HAA requires the City to compensate Outfront Media for the billboard. In order to be liable to pay compensation under the HAA, the City must cause a billboard's removal by either regulation or ordinance. The HAA does not require a landowner to maintain or pay compensation when the owner terminates a lease, license or other right to site a billboard. That the Property was sold to the City rather than a non-governmental entity does not make the City liable to pay compensation to Outfront Media. The City did not by rule, regulation, code, or condition terminate the License Agreement. In this case, Outfront Media is not entitled to compensation

under the HAA. *See, e.g., National Advertising Co. v. North Carolina Dep't of Transp.*, 124 N.C. App. 620, 627; 478 S.E.2ed 248 (1996) (holding no compensation was due for the removal of a billboard on land purchased by the state's highway department because as the purchaser of property, the highway department has the same right as any property owner to exclude others from the use of its property). The City is likewise entitled to judgment in its favor on Outfront Media's Counterclaims.

## IV.　CONCLUSION

Accordingly, the City's Motion for Judgment on the Pleadings [#5] is GRANTED. This cause of action is dismissed. Outfront Media's Takings Claim is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated:  March 29, 2023　　　　　　　　　　/s/Gershwin A. Drain
　　　　　　　　　　　　　　　　　　　　　GERSHWIN A. DRAIN
　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record by electronic and/or ordinary mail.

/s/ Teresa McGovern
Case Manager